FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SEP 1 2 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

MAYON J. HOARD,

     Plaintiff,

v.

CUH2A, INC. ARCHITECTURE
ENGINEERING PLANNING,

     Defendant.

CIVIL ACTION NO.

1:04-CV-2370-JEC

## O R D E R   &   O P I N I O N

This case is presently before the Court on defendant's Motion for Summary Judgment [45]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [45] should be **GRANTED**.

### BACKGROUND

This is an employment discrimination case. Defendant is an engineering firm. (Def.'s Statement of Material Facts ("DSMF") [45] at ¶ 1.) Its headquarters are in Princeton, New Jersey, but it maintains an office in Atlanta. (Pl.'s Statement of Material Facts ("PSMF") [62] at ¶ 3.) In January or February of 2002, plaintiff interviewed for a position as an engineer at defendant's Atlanta

facility.  (DSMF at ¶ 3.)  Bill Freeman, defendant's Director of HVAC Engineering for Atlanta, personally attended the interview.  (*Id.* at ¶¶ 2-3.)  Steve Waller, Director of HVAC Engineering for all of defendant's operations, and Joe Lisowski, Senior Controls Engineer, attended the interview via videoconference from defendant's home office in Princeton.  (*Id.* at ¶ 3.)  During the interview, plaintiff told Freeman, Waller, and Lisowski that he had a medical condition related to a thyroid problem. (Hoard Dep. at 19.)  He also told them his high school graduation date so that Freeman, Waller, and Lisowski would be aware of plaintiff's age (58) and years of work experience.  (*Id.* at 83; DSMF at ¶ 4.)[1]

After consulting Susan Roberts, defendant's Director of Human Resources, Freeman, Waller, and Lisowski hired plaintiff as a Senior Staff Engineer in defendant's Atlanta office.  (DMSF at ¶ 5; PSMF at ¶ 1.)  Plaintiff began working for defendant on February 4, 2002.  (DSMF at ¶ 5.)  When he began, defendant instructed plaintiff that he would have two supervisors, Bill Freeman, in Atlanta, and Joe Lisowski, in Princeton.  (PSMF at ¶ 4.)

_____

[1]  Plaintiff denies this statement of fact.  (See Pl.'s Resp. to DSMF [60] at ¶ 3.)  However, the deposition pages cited by plaintiff in response to defendant's statements of fact provide no basis for the denial.  Plaintiff admitted in his deposition that he informed Freeman, Waller, and Lisowski during the interview both that he had a thyroid condition, and that he was 58 years old.  (Hoard Dep. at 19, 82-83.)

Plaintiff performed well at his job for the first year, and received a favorable six-month and annual review.[2]   (Pl.'s Resp. to Def.'s Mot. for Summ. J. [61] at Exs. 6, 7; Freeman Certification at ¶ 13.)   According to defendant, however, plaintiff started experiencing problems at work in February and March of 2003.   (DSMF [45] at ¶ 6.)   Specifically, defendant alleges that plaintiff began having negative interactions with other employees, including his supervisor and other management personnel, and constantly demanding management's time to address a variety of staffing, organizational, and other issues.   (Def.'s Br. in Supp. of Summ. J. ("Def.'s Br.") [45] at 18.)   Defendant claims that plaintiff's bad attitude and disruptive behavior continued for several months.   (*Id.*)   In addition, and during the same time frame, defendant became aware that plaintiff had billed over 300 hours to an overhead account.   (*Id.* at 19.)   When questioned about the hours, plaintiff was unable to produce sufficient work product or documentation to account for the time.   (*Id.*)

Defendant contends that as a result of these issues, Freeman decided in May of 2003 that "it was not in the best interest of

---

[2]   Plaintiff refers to his annual review as the "April 25, 2003 Review."   (PSMF at ¶ 7.)   The review was signed on April 25, 2003, but covered the period from February 2002 until February 2003.   (Pl.'s Br. [61] at Ex. 7.)   The review period is clearly indicated on the document.   (*Id.*)   Thus, the review does not address plaintiff's performance after February 2003.   (*Id.*; Freeman Dep. at 59-61.)

AO 72A
(Rev.8/82)

[defendant] for [plaintiff] to continue working there." (PSMF [62] at ¶ 59.) In a conference call on June 3, 2003, Freeman told Waller and Roberts that he thought plaintiff "no longer provided value or benefit to [defendant] and in fact he had become a liability." (*Id.* at ¶ 60.) Waller agreed with Freeman's assessment. (*Id.*) Defendant subsequently offered plaintiff the option of resignation or termination. (*Id.* at ¶ 63; Freeman Dep. at 62, 78-80; Hoard Dep. at 73.) Plaintiff chose to resign. (Freeman Dep. at 78-81; Hoard Dep. at 73.)

Plaintiff acknowledges that he did not have a good relationship with Freeman, and documentary evidence in the record confirms that plaintiff sent several lengthy e-mails to Waller and Lisowski addressing staffing, organizational, and other issues. (Hoard Dep. at 91; Exs. 6-11.) A recurring theme in these e-mails is plaintiff's criticism of management in Atlanta, and repeated requests that plaintiff no longer be required to report to Freeman. (*Id.* at Exs. 9-10.) Plaintiff also concedes that he billed 332 hours to a non-billable overhead account. (*Id.* at 103-106.) Finally, plaintiff does not dispute that he became involved in at least three conflicts with co-workers between February and May of 2003. (*Id.* at 95-99, 110-114.) He admits, further, that after his conflict with Heather Strozier, on May 9th, he became so frustrated that he left the office for the day without obtaining prior approval from his supervisor.

4

(*Id.* at 114-115.)

Plaintiff suggests, however, that his actions between February and May of 2003 were caused by a flare-up of his Graves disease. (Hoard Aff. at ¶ 3.)  Plaintiff was diagnosed with Graves disease in 1997.  (Hoard Dep. at 14.)  He testified at his deposition that the disease, which can affect his "stamina" and "ability to think," is generally well-controlled with medication.  (PSMF at ¶ 5; Hoard Dep. at 50, 54-55; Hoard Aff. at ¶ 5.)  However, as plaintiff stated in his affidavit: "Beginning in February, 2003, and continuing through to June, 2003, while [he] was employed with Defendant, [he] experienced a worsening of the symptoms of [his] Graves disease. During this time, [his] medications were being adjusted by [his] doctor, so that most, if not all, of the symptoms of [his] Graves disease were not brought under control."   (Hoard Aff. at ¶ 3.) Plaintiff thus implies that his behavior during this time period, including the e-mails to Waller and Lisowski, and conflicts with his supervisor and co-workers, were manifestations of his Graves disease. (*See also,* Hoard Dep. at 136.)

Plaintiff also argues that defendant did not terminate him as a result of his conduct at work, but on account of his Graves disease and his request for accommodations. (Pl.'s Br. in Response to Def.'s Mot. for Summ. J. ("Pl.'s Br.")[61] at 10-12.)   In addition to generally informing Freeman, Waller, and Lisowski during his initial

AO 72A
(Rev.8/82)

interview that he had a thyroid condition, plaintiff claims that he specifically notified Freeman that he had Graves disease in February, 2003.  (PSMF at ¶ 15.)  According to plaintiff, he also requested accommodations for his disease, including moving his workstation to reduce excessive noise and light, and reducing his workload. (Hoard Aff. at ¶ 6.)  Plaintiff claims that defendant never implemented any of his requests, and began retaliating against him for making the requests by treating him unfairly, and ultimately terminating him. (*Id.* at ¶ 8.)  Alternatively, plaintiff argues that defendant terminated him on account of his age, 59 at the time of his resignation.  (Pl.'s Br. at 24-32.)

Plaintiff filed this lawsuit asserting claims under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq.*  (Compl. [1] at ¶ 1.)  Defendant has filed a motion for summary judgment on plaintiff's ADA and ADEA claims, which is presently before the Court.

**DISCUSSION**

**I.    Summary Judgment Standard**

Summary judgment is .appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

6

to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried

7

his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## II. Plaintiff's ADA Claims[3]

The ADA was designed to prohibit discrimination against disabled individuals. *D'Angelo v. ConAgra Foods, Inc.,* 422 F.3d 1220, 1227, (11th Cir. 2005). The terms of the statute provide that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other

---

[3] Plaintiff failed to respond to defendant's argument that it was entitled to summary judgment on plaintiff's hostile work environment claim. (*See generally*, Pl.'s Br. [61].) Accordingly, the Court finds that plaintiff has abandoned this claim. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1114 (11th Cir. 1993) (holding that plaintiffs abandoned claim by failing to raise it in their brief); and *Hammond v. Gordon County,* 316 F.Supp. 2d 1262, 1280 (N.D. Ga. 2002) (Murphy, J.) (holding that plaintiff abandoned claims by failing to respond to defendant's arguments on summary judgment).

8

terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Plaintiff contends that defendant discriminated against him because of his Graves disease when it terminated his employment. (Pl.'s Br. [61] at 10-12.)

Plaintiff does not present any direct evidence of discrimination. *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358-59 (11th Cir. 1999) (explaining that "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age' will constitute direct evidence") (quoting *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081-82 (11th Cir. 1990)). Accordingly, the *McDonnell Douglas* burden-shifting framework is applicable to this case. *Collado v. United Parcel Service Co.,* 419 F.3d 1143, 1149-1150 (11th Cir. 2005). Under this framework, plaintiff initially has the burden of establishing a *prima facie* case of disability discrimination. *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1193 (11th Cir. 2004) (citing *Wascura v. City of South Miami,* 257 F.3d 1238, 1242 (11th Cir. 2001)). Once plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for his termination. *Id.* If defendant meets its burden, plaintiff must produce some evidence that defendant's articulated reason is "unworthy of credence," and a

9

pretext for discrimination, in order to survive summary judgment. *Id.*

### A.   Plaintiff's Prima Facie Case

To establish a *prima facie* case of discrimination under the ADA, plaintiff must show that:  1) he has a disability; 2) he is "qualified" for his position; and 3) defendant discriminated against him because of his disability. *Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1215 (11th Cir. 2004).   Defendant contends that plaintiff cannot establish a *prima facie* case, because he is not "disabled," as that term is defined under the ADA. (Def.'s Br. [45] at 2.)   The Court agrees.

Under the ADA, an individual is "disabled" if he:

> A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> B) [has] a record of such impairment; or
>
> C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2).   Plaintiff alleges in his Complaint that his disorder is an "impairment" that substantially limits one or more of his major life activities, qualifying him as disabled under § 12102(2)(A).   (Compl. [1] at ¶ 7.)   In the alternative, plaintiff argues that defendant "regarded [him] as" disabled under § 12102(2)(C).   After a careful review of all the evidence in the record, the Court concludes that plaintiff cannot establish that he

10

is "disabled" under definition (A) or "regarded as" disabled under definition (C).[4]

> 1. Plaintiff is not "disabled" under § 12102(2)(A).

Graves disease has been held to constitute an impairment. *See Harris v. H & W Contracting, Co.*, 102 F.3d 516, 519-520 (11th Cir. 1996) (recognizing that Graves disease constitutes a physical impairment). Merely having an impairment, however, does not render an individual "disabled" under § 12102(2)(A). *Collado,* 419 F.3d at 1155. Plaintiff must also show that his Graves disease substantially limits one or more of his major life activities. *Id.* That determination does not follow automatically from plaintiff's diagnosis of Graves disease; instead, it must be made "on a case-by-case basis." *Id.*

Under the ADA, "substantially limited" means "unable to perform" or "significantly restricted as to the condition, manner, or duration" of performance in comparison with the average person in the general population. 29 C.F.R. §§ 1630.2(j)(1)(i),(ii). Factors that may be relevant to the inquiry include: 1) the nature and severity of plaintiff's impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or long-term impact, or the expected permanent or long term impact of or

---

[4]   Plaintiff does not argue that he has a "record of" a substantially limiting impairment under § 12102(2)(B).

11

resulting from the impairment.   29 C.F.R. § 1630.2(j)(2).

Plaintiff has not responded to defendant's argument that his Graves disease does not substantially limit any major life activity. (Pl.'s Br. [61] at 4-7.)   Nor has he produced any evidence addressing the above factors, or addressing more generally the extent to which his Graves disease restricts the "condition, manner, or duration" of any major life activity.   Plaintiff's own testimony suggests that medication controls most of the symptoms of the disease.   (Hoard Dep. at 50.)   *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 488 (1999) (holding that "disability is to be determined with reference to corrective measures").   Plaintiff's vague statements in his deposition that the disease sometimes affects his "stamina" and "ability to think," and in his affidavit that "from time to time" it causes him to "become hypersensitive to light and noise," are insufficient to create an issue of fact as to whether the disease substantially limits a major life activity. (Hoard Dep. at 27; Hoard Aff. at ¶ 4.)   *See Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1222 (11th Cir. 2000) (concluding that plaintiff's tendinitis, while limiting, did not impose the statutorily required substantial limitation on his ability to perform manual tasks); and *Hilburn v. Murata Elec. North America, Inc.,* 181 F.3d 1220, 1228 (11th Cir. 1999) (holding that diminished tolerance for normal daily activities did not constitute a substantial limitation as required

12

by the ADA).

        2.    <u>Plaintiff was not "regarded as" disabled under</u>

           <u>§ 12102(2)(B).</u>

Plaintiff's alternative argument, that defendant "regarded" him as disabled, is unpersuasive.  (*See* Pl.'s Br. [61] at 5-10.)  An individual is "regarded as" disabled if he:

> 1)    [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by [his employer] as constituting such limitation; [or]
>
> 2)    [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment.

29 C.F.R. § 1630.2(1).  Plaintiff claims that defendant regarded his Graves disease as an impairment that substantially limited his ability to work.  (Pl.'s Br. at 5-10.)

With respect to the major life activity of working, it is well established that "'[t]he inability to perform a single, particular job does not constitute a substantial limitation.'"  *Collado*, 419 F.3d at 1157 (citing *Rossbach v. City of Miami*, 371 F.3d 1354, 1359 (11th Cir. 2004)).  An individual is only substantially limited in his ability to work, for purposes of the ADA, if he is "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.'"  *Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(i)).  Moreover, "[a]s with actual

disabilities, a perceived impairment must be believed to *substantially limit* a major life activity of the individual." *Hilburn,* 181 F.3d at 1230 (11th Cir. 1999) (emphasis added). Thus, in order to prevail on his "regarded as" claim, plaintiff must demonstrate that defendant considered him significantly restricted in his ability to perform a "'class of jobs or a broad range of jobs in various classes.'" *Id.*

In support of this claim, plaintiff cites several comments made by Freeman and Waller concerning plaintiff's behavior at work during the last three months of his employment. (Pl.'s Br. [61] at 7.) Specifically, plaintiff quotes Freeman's remarks that plaintiff had "developed behavior problems" and had become "inappropriately aggressive." (*Id.*) In addition, plaintiff points to Freeman's statement, in plaintiff's February, 2003 review, that plaintiff "can sometimes let his surroundings and others affect his performance." (*Id.*) Plaintiff also cites excerpts from Waller's Certification that plaintiff was "unreasonable and intolerable," and had become "an undue hardship" and a liability. (*Id.*)

As an initial matter, the comments that plaintiff cites concern behavior that plaintiff admits in his deposition, and that is supported by additional documentary evidence in the record. For example, Freeman remarked that plaintiff had become "aggressive" in the context of describing several incidents in which plaintiff

14

inappropriately "confront[ed] people" or "challenge[d] people."
(Freeman Dep. at 40.)  Plaintiff admits in his deposition that these
confrontations occurred.  (Hoard Dep. at 95-100, 110-116.)  Waller's
comments also refer to confrontations, as well as a string of e-
mails that troubled Waller because of the way plaintiff's "thoughts
wandered."  (Pl.'s Br. [61] at Ex. 3.)  The lengthy e-mails in the
record confirm Waller's concerns.   (Hoard Dep. at Exs. 6--11.)
"Where a 'defendant's recognition of plaintiff's limitations [i]s
not an erroneous perception, but instead [i]s a recognition of fact
.  .  .  a finding that plaintiff was regarded as disabled and,
therefore, [is] entitled to the protections of the ADA[,]  is
inappropriate.'"   *Hilburn,* 181 F.3d at 1230 (internal citations
omitted).

Moreover, the comments and documents cited by plaintiff do not
permit an inference that defendant regarded plaintiff as unable to
perform a "class of jobs" or a "broad range of jobs  within various
classes," as required by the ADA.  *See Collado,* 419 F.3d at 1157,
and *Watson v. City of Miami Beach,* 177 F.3d 932, 935 (11th Cir.
1999) (evidence that other officers regarded plaintiff as
"paranoid," "disgruntled," "oppositional," "difficult to interact
with," and "unusual," insufficient to raise a question of fact
concerning whether plaintiff was regarded as disabled).   It is
apparent from Freeman and Waller's comments that they perceived

15

plaintiff to be exhibiting behaviors that diminished his ability to effectively perform his job as Senior Staff Engineer.  As noted, however, "[b]eing 'regarded as unable to perform only a particular job . . . is insufficient, as a matter of law, to prove that [plaintiff] is regarded as substantially limited in the major life activity of working.'"  *Collado,* 419 F.3d at 1157 (citing *Murphy v. United Parcel Serv.,* 527 U.S. 516, 525 (1999)).

Plaintiff has presented no additional evidence, beyond his own speculation, that defendant regarded him as substantially limited in his general ability to work.  *See Hilburn,* 181 F.3d at 1228 ("Conclusory allegations without specific supporting facts have no probative value.").  As the evidence in the record is insufficient to raise a question of fact concerning whether he is "disabled," as required to establish his *prima facie* case, defendant is entitled to summary judgment on plaintiff's ADA claim.

**B.  Defendant's Legitimate, Nondiscriminatory Reasons for Terminating Plaintiff**

Even if plaintiff were able to establish a *prima facie* case, defendant would still be entitled to summary judgment.  As noted, the *McDonnell Douglas* burden-shifting framework applies to this case.  *Collado,* 419 F.3d at 1149-1150.  Under this framework, plaintiff initially has the burden of establishing a *prima facie* case of disability discrimination.  *Cleveland,* 369 F.3d at 1193.

16

Once plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for his termination. *Id.* If defendant meets this burden, plaintiff must produce some evidence that defendant's articulated reason for his termination is "unworthy of credence," and a pretext for discrimination, in order to survive summary judgment. *Id.*

Defendant has proffered at least three legitimate non-discriminatory reasons for asking plaintiff to resign, including plaintiff's: 1) negative interactions with other employees, including his supervisor and other management personnel; 2) constantly demanding management's time to address a variety of staffing, organizational, and other issues; and 3) billing over 300 hours to an overhead account. (Def.'s Br. [45] at 18-20.) Each of these reasons is well-supported by documentary evidence and testimony, including plaintiff's own deposition testimony.

Regarding plaintiff's negative interactions with his supervisor and co-workers, plaintiff concedes in his deposition that he did not have a positive relationship with Freeman. (Hoard Dep. at 91.) Plaintiff also admits that he was involved in at least three conflicts with other employees during the last several months of his employment. (*Id.* at 95-100, 110-116.) After his "heated discussion" with co-worker Heather Strozier on May 9th, plaintiff stated "I am so goddamned frustrated right now, I can't see

17

straight." (*Id.* at 112.)   Shortly thereafter, plaintiff left the office for the day, without permission from his supervisor, missing a meeting during which he was scheduled to make a presentation. (*Id.* at 114-116.)   Plaintiff himself acknowledged in an e-mail to Waller on March 9th that "[t]he obvious problem seems to be my attitude," and in another e-mail to Lisowski on March 13th that he had "been disruptive lately."   (*Id.* at Exs. 7, 9.)

As to demanding an inordinate amount of time from management, the record contains a series of lengthy e-mails from plaintiff to Waller and Lisowski beginning in February, 2003.   (Hoard Dep. at Exs. 6-11, 13.)   In his initial e-mails, plaintiff merely raised concerns about defendant's mechanical systems and designs, and requested a personal meeting with Waller and Lisowski, in Princeton, to address those issues.   (*Id.* at Ex. 6.)   By early March, however, plaintiff's e-mails had become significantly longer, raising a number of issues, including problems he apparently was having with Freeman.

On March 9th, plaintiff sent a four-page e-mail to Waller outlining issues that "should be discussed at the Princeton . . . meeting."   (Hoard Dep. at Ex. 7.)   In addition to technical and business issues, plaintiff expressed his desire to report to a higher level manager than Freeman, to be removed from the annual review process, and to stop having to "justify" what he is doing.

18

(*Id.*)   Plaintiff further complained that Freeman managed him too closely, "nit-picked" him, and had no understanding of plaintiff's job.   (*Id.*)

On March 13th, plaintiff sent an e-mail to Lisowski finalizing arrangements for the Princeton meeting.   (Hoard Dep. at Ex. 9.)   In this e-mail, plaintiff stated:   "I've been disruptive lately, but I always have done that just before I make a major breakthrough in something that may or may not relate to whatever I'm being disruptive about.   The nuns could always tell when something was brewing with me.   My mother knew that before the nuns.   But spanking me never made things better - that just made things worse."   (*Id.*)

Plaintiff sent another e-mail to Lisowski on March 14th, again detailing concerns about defendant's current operating methods and criticizing Freeman.   (Hoard Dep. at Ex. 10.)   Plaintiff concluded this e-mail by stating that his present position in the Atlanta office was "not working well at all" and suggesting that he should not have to report to Freeman because plaintiff "[didn't] need direct supervision and [doesn't] react well to the present micromanagement techniques that [Freeman] uses."   (*Id.*)

This series of e-mails supports defendant's assertion that plaintiff was beginning to make unreasonable demands on management's time.   (Def.'s Br. [45] at 19.)   Moreover, Waller and Lisowski both testified, and plaintiff does not dispute, that they agreed to meet

AO 72A
(Rev.8/82)

with plaintiff in Princeton in early April because they were concerned by his e-mails and other reports of his behavior at work. (Pl.'s Br. [61] at Ex. 1, ¶¶ 12, 15; and Ex. 3, ¶¶ 21, 27.) After the meeting, Waller and Lisowski sent plaintiff a memorandum reflecting the parties' discussions and addressing several improvements that plaintiff needed to make with respect to his general attitude and performance. (*Id.* at Ex. 1, ¶ 19.) Plaintiff responded by thanking Waller for "being patient with him" and advising Waller that he would "proceed with each of the action items" described in the memorandum. (Hoard Dep. at Ex. 11.) Apparently, however, plaintiff continued to call Lisowski and Waller during April and May of 2003 to "vent his frustrations." (Pl.'s Br. [61] at Ex. 1, ¶ 22.)

Finally, plaintiff concedes that he charged 332 non-billable hours to an overhead account. (Hoard Dep. at 103-104.) There is evidence in the record that, when questioned about the overhead hours during the April meeting, plaintiff was unable to provide an explanation or any work product that would justify those hours. (Pl.'s Br. [61] at Ex. 1, ¶ 17.) The week after the meeting, plaintiff provided some documentation to substantiate the hours billed to the overhead account. (*Id.* at ¶ 21.) After reviewing the documentation, Freeman, Waller, and Lisowski agreed that the quantity and quality of the documentation and work was significantly

20

less than and inconsistent with the number of hours charged for the work.  (*Id.*)  Plaintiff testified in his deposition that he understood the company's concern about billing to an overhead account.  (Hoard Dep. at 106.)

The evidence in the record concerning plaintiff's demand on management's time, his negative interactions with his supervisor and co-workers, and the billing issue supports defendant's legitimate, non-discriminatory reasons for asking plaintiff to resign.[5]  The Court thus finds that defendant has met its "exceedingly light burden" of articulating a legitimate, non-discriminatory reason for plaintiff's termination.  *See Perryman v. Johnson Prods. Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir. 1983).

### C.  **Pretext**

Once defendant proffers sufficiently probative, credible, non-discriminatory reasons for its actions, as it has in the instant case, plaintiff must come forward with specific evidence tending to show that such reasons were a pretext for discrimination.  *See*

---

[5] Even if some of plaintiff's inappropriate behavior at work was related to his Graves disease, as plaintiff suggests, it is well-settled that "the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability."  *Ray v. Kroger Co.,* 264 F.Supp.2d 1221, 1228 (S.D. Ga. 2003)(holding that even though plaintiff's constant blurting out of vulgar language was caused by his Tourette's Syndrome, defendant had a legitimate basis for terminating his employment).

*Willis v. Conopco, Inc.,* 108 F.3d 282, 287 (11th Cir. 1997) (finding summary judgment proper where ADA plaintiff failed to offer evidence to raise an inference that defendant's articulated explanation for her termination was pretext for discrimination); and *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 952 (N.D.Ga. 1995) (Hull, J.)(concluding that plaintiff was not entitled to relief under the ADA where she failed to present evidence that defendant's legitimate, non-discriminatory reasons for her termination were pretextual). Plaintiff has not met this burden.

In his effort to demonstrate pretext, plaintiff first asserts that "[d]efendant's explanation of [plaintiff's] termination has changed radically from June, 2003 to present." (Pl.'s Br. [61] at 15.) When an employer asserts "inconsistent" or "shifting reasons" for an adverse decision, its explanation may be "unworthy of credence." *Cleveland,* 369 F.3d at 1193-94. After a thorough review of the record, however, the Court has found no inconsistencies in defendant's explanation for its decision to terminate plaintiff.

The parties agree that Freeman, Waller, and Roberts participated in a conference call on June 3, 2003, and reached a collective decision that plaintiff "no longer provided value or benefit to [defendant], and in fact had become a liability." (PSMF [62] at ¶¶ 60, 63.) Following the meeting, Freeman gave plaintiff the option of resignation or termination. (Freeman Dep. at 62, 78-

AO 72A
(Rev.8/82)

81; Hoard Dep. at 73.)  Plaintiff chose to resign.  (Hoard Dep. at 73.)  Defendant subsequently informed the Department of Labor that plaintiff "voluntarily resigned."  (Pl.'s Br. [61] at Ex. 13.) Defendant also maintained in its initial interrogatories in this case that plaintiff resigned.  (*Id.* at Ex. 15.)  Plaintiff argues that defendant's prior statements that he "resigned" are inconsistent with defendant's asserted legitimate non-discriminatory reasons.  The Court does not agree.

Although they did not provide any details concerning plaintiff's resignation, defendant's prior statements were factually accurate:  plaintiff concedes that defendant gave him the option of termination and resignation, and that he chose to resign.  (Hoard Dep. at 73.)  In order to meet its burden on summary judgment of articulating legitimate, nondiscriminatory reasons for its decision, defendant has explained why it asked plaintiff to resign, namely, that plaintiff had conflicts with his supervisor and co-workers, consumed too much of management's time, and billed 332 hours to an overhead account.  (Def.'s Br. [45] at 18-20.)  Defendant's prior statements that plaintiff resigned are not inconsistent with its later elaboration on the reasons underlying his resignation.  *See Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1332 (11th Cir. 1998)(stating that employer's "later elaboration . . . of a general reason is insufficient to show pretext").

23

In a related vein, plaintiff criticizes defendant's explanation for his termination as an "ex post facto" justification. (Pl.'s Br. [61] at 15.)  Plaintiff claims that he did not receive any warnings or reprimands before his termination, and characterizes the incidents cited by defendant, including plaintiff's conflicts with his co-workers and supervisor, as "undocumented, minor events." (*Id.* at 16-17.)  As an initial matter, defendant did give plaintiff a written warning on May 19th, after he left work following a conflict with co-worker Heather Strozier.  (Pl.'s Br. [61] at Ex. 11.) Moreover, and contrary to plaintiff's argument, his behavior problems are documented in his own e-mails, sent to Waller and Lisowski in March, 2003.  Plaintiff acknowledged in these e-mails that he had been "disruptive" and that "the problem was [his] attitude."  (Hoard Dep. at Exs. 7, 9.)  It is also apparent from plaintiff's March e-mails, and from his deposition testimony, that plaintiff did not have a positive relationship with his supervisor, and that he engaged in conflicts with at least three co-workers. (*Id.;* Hoard Dep. at 91.)  Thus, the undisputed evidence in the record belies plaintiff's suggestion that defendant concocted its legitimate non-discriminatory reasons after the fact, in an effort to "cover up a discriminatory purpose." *Cleveland,* 369 F.3d at

24

1195.[6]

In a further effort to discredit defendant's explanation, plaintiff points out that his termination occurred only a month after defendant finalized plaintiff's favorable annual review on April 25, 2003. (Pl.'s Br. [61] at 15.) Although defendant finalized plaintiff's annual review on April 25, 2003, plaintiff does not dispute that the review covered the yearly period beginning in February, 2002 and ending in February, 2003. (*Id.* at Ex. 7; Freeman Dep. at 59-61.) Defendant acknowledges that plaintiff had a successful first year of employment. (DSMF [45] at ¶ 6.) It is thus not surprising, and not particularly illuminating, that plaintiff received a favorable review for this time period. According to defendant, the incidents that led to plaintiff's resignation began in February or March of 2003, and continued through the remainder of his employment. (*Id.*) That plaintiff received a favorable review for the period ending in February, 2003, therefore, does not provide a basis for concluding that defendant's articulated explanation is "unworthy of credence."

Finally, plaintiff does not present any evidence to rebut

---

[6] That defendant only issued one "Final Warning" to plaintiff before terminating him may not be an ideal policy, but it is not a basis for inferring pretext. *See Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that federal courts do not sit as "a super-personnel department" to reexamine employers' business decisions).

AO 72A
(Rev.8/82)

defendant's argument concerning excessive hours billed to an overhead account. Plaintiff's failure to rebut, or even address, the billing issue mandates summary judgment on behalf of defendant. *See Chapman v. AI Transport,* 229 F.3d 1012, 1025 (11th Cir. 2000)(noting that plaintiff must rebut *each* of the employer's proffered reasons for its challenged action) (emphasis added) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir. 1997)).

## III. Plaintiff's ADA Retaliation Claim

Plaintiff has also asserted a claim for ADA retaliation. In support of this claim, plaintiff contends that after he requested accommodations for his Graves disease, defendant retaliated by: 1) giving him a "Final Warning" on May 19, 2003; and 2) terminating his employment in June, 2003. (Pl.'s Br. [61] at 20-21.) Again, plaintiff presents no direct evidence of retaliation. Thus, the *McDonnell Douglas* burden-shifting framework applies to plaintiff's ADA retaliation claim.

To establish a *prima facie* case of ADA retaliation, plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected expression and the adverse action. *Shotz v. City of Plantation, Florida,* 344 F.3d 1161, 1180 (11th Cir. 2003); *Roberts v. Rayonier, Inc.,* 135 Fed. Appx. 351, 357

26

(11th Cir. 2005). Defendant contends that plaintiff did not engage in "statutorily protected expression." (Def.'s Br. [45] at 21.) Defendant argues, further, that there is no evidence of a causal connection between plaintiff's alleged expression and his warning or resignation. (*Id.*)

As to the protected expression element, plaintiff "is not required to prove that he was seeking an accommodation for an actual disability covered by the statute." *Roberts,* 135 Fed. App. at 357. "It is sufficient if he establishes that he had a reasonable belief that he was disabled or regarded as disabled and thus entitled to an accommodation." *Id.* Although the Court has concluded that plaintiff's Graves disease did not constitute a disability under the ADA, there is evidence in the record that plaintiff believed he was entitled to accommodations for the disease, and that his belief was "reasonable." (*See* Hoard Dep. at 25-29; Hoard Aff. at ¶¶ 3, 5-7.)

Defendant argues, however, that plaintiff's statements concerning potential modifications to his workstation and workload cannot be construed as requests for accommodation. (Def.'s Br. [45] at 21.) The evidence on this issue is in dispute. Plaintiff claims that he gave defendant written and verbal notices of his Graves disease, accompanied by requests for accommodations, in February and March, and again in April, 2003. (Pl.'s Br. [61] at 19.) As evidence, plaintiff cites the written statements of Freeman, Waller,

27

and Lisowski, and a February 24, 2003 document, titled "Performance Issues," in which plaintiff requested a reduction of noise in his work area.  (*Id.*)

The Court questions whether the "Performance Issues" document can be considered a request for accommodation. (Pl.'s Br. [61] at Ex. 8.)  Most of the items plaintiff requests in this document, including a cell phone, a wage increase, and additional vacation time, admittedly have nothing to do with his Graves disease.  (*Id.*) Only item number nine even arguably seeks an accommodation.  In item number nine, plaintiff states:  "Reduction of area noise in my workspace-such as moving Heather has been discussed recently." (*Id.*)  Plaintiff also states, however, that:  "This is a low priority issue."  (*Id.*) Nevertheless, other evidence in the record, including the statements of Waller, Lisowski, and Freeman, support plaintiff's claim that he made a second request for accommodations to Freeman in March, 2003, and to Waller and Lisowski in April, 2003.  (Pl.'s Br. [61] at Exs. 1--3.)  Construing the evidence in favor of plaintiff, the Court will assume that there is a question of fact, albeit barely, concerning whether plaintiff engaged in protected expression under the ADA.

The evidence on causation is more problematic for plaintiff. To establish causation, plaintiff relies entirely on temporal proximity.  (Pl.'s Br. [61] at 23.)  Plaintiff points out that he

28

made his last request for accommodations to Lisowski and Waller on April 1st and 2nd, during the Princeton meetings. (*Id.*) Six weeks later, defendant issued the "Final Warning," and two months later defendant asked plaintiff to resign. (*Id.* at 24.) According to plaintiff, the temporal proximity between his request for accommodations, and the warning and resignation, is sufficient to raise a question of fact on causation. (*Id.*)

The law is unclear whether a six-week or two-month time lapse is sufficient to imply causation. *See Higdon v. Jackson,* 393 F.3d at 1220 (noting that three to four month time periods have been held insufficient, whereas one month has been held sufficient evidence of causation). Assuming, without deciding, that it is, defendant still is entitled to summary judgment on plaintiff's retaliation claim. As noted, even if plaintiff can establish a *prima facie* case of retaliation, to survive summary judgment, he must present some evidence to rebut defendant's legitimate, non-discriminatory explanation for its actions. Plaintiff has not met this burden.

With respect to plaintiff's resignation, defendant has articulated at least three legitimate reasons for its decision to ask plaintiff to resign, each of which is supported by ample evidence in the record. (Def.'s Br. [45] at 18-20.) As discussed, plaintiff has failed to rebut defendant's explanation with sufficient evidence to create a question of fact on pretext.

29

As to the "Final Warning," the Court finds, as an initial matter, that the warning does not qualify as an "adverse action." Adverse actions that fall short of an ultimate employment decision must meet "'some threshold level of substantiality'" to form the basis of a retaliation claim. *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000)(citing *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3rd Cir. 1997)). The written warning plaintiff received does not meet this threshold. *Id.* at 588-589. *See also, Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1246 (11th Cir. 2001)(holding that the "loss of prestige and potential future opportunities associated with two negative job performance memoranda" does not rise to the level of an adverse action).

Moreover, defendant asserts a legitimate, non-discriminatory reason for issuing the warning, namely, that plaintiff left work at 10:00 a.m. without obtaining approval from his supervisor. (Def.'s Br. [45] at 19-20.) Plaintiff admits that the events described in the "Final Warning" occurred, but he characterizes the warning as "frivolous." (Hoard Dep. at 110-117; Pl.'s Br. [61] at 23.) A plaintiff is not authorized to "substitute his business judgment for that of the employer." *Chapman,* 229 F.3d at 1030. Neither is the Court. *See Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that federal courts do not sit as "a super-

30

AO 72A
(Rev.8/82)

personnel department" to reexamine an employer's business decisions). Provided that the employer proffers a reason for its action "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman,* 229 F.3d at 1030. Plaintiff's characterization of the warning as "frivolous" does not meet this standard.

As with his ADA discrimination claim, plaintiff has not presented sufficient evidence to rebut defendant's legitimate reasons for its allegedly retaliatory actions, both in issuing plaintiff a warning and in asking for his resignation. As a result, defendant is entitled to summary judgment on plaintiff's ADA retaliation claim.

**IV.  Plaintiff's ADEA Claim**

In addition to his ADA claims, plaintiff asserts a claim under the ADEA. (Compl. [1].) It is unlawful under the ADEA to discharge or otherwise discriminate against an employee because of his age. *Standard,* 161 F.3d at 1329 (citing 29 U.S.C. § 623(a)(1)). Plaintiff claims that defendant terminated him on account of his age, in violation of the ADEA. (Pl.'s Br. [61] at 27-31.) Again, the Court applies the *McDonnell Douglas* analysis to plaintiff's ADEA claim.

AO 72A
(Rev.8/82)

### A.   Plaintiff's *Prima Facie* Case

In order to establish a *prima facie* case of age discrimination, plaintiff must demonstrate that:  1) he is over 40 years old; 2) he was qualified for his job; 3) he was terminated from his job; and 4) he was replaced by a person substantially younger than himself. *Eskra v. Provident Life and Accident Ins. Co.,* 125 F.3d 1406, 1411 (11th Cir. 1997).  Defendant concedes that plaintiff has established a *prima facie* case:  he was 59 years old, and qualified for his position as senior staff engineer, when defendant asked for his resignation in June, 2003.[7]  (Def.'s Br. [45] at 26.)

### B.   Defendant's Legitimate, Nondiscriminatory Reasons

As discussed above, defendant asserts at least three legitimate reasons for its decision to ask for plaintiff's resignation, and there is ample evidence in the record to support each reason. Accordingly, defendant has met its burden of articulating a legitimate, non-discriminatory reason for its actions.  *See Perryman,* 698 F.2d at 1142.

### C.   Pretext

In addition to the arguments discussed above, plaintiff alleges

---

[7]   It should be noted that the defendant hired plaintiff just a year before, when he was 58.  Hence, the company obviously harbored no age-based bias when they hired plaintiff.  Plaintiff's theory, necessarily, is that the defendant developed this bias over the next year.

that: 1) comments referring to plaintiff's age; and 2) defendant's treatment of another employee in his age group, Marlene Nieman, demonstrate that the real reason defendant terminated plaintiff is his age. (Pl.'s Br. [61] at 27-31.) Both of these allegations are without support in the record.

With regard to the age-based comments, plaintiff alleges that employees called him an "oldster," and made statements such as "go ask Jerry, he's been around a long time" and "Jerry's the oldest guy in the department." (PSMF at ¶ 37.) However, plaintiff does not indicate who exactly made these comments. Plaintiff alleges only that the "comments were made at work." (PSMF at ¶ 37.) Comments by plaintiff's co-workers are not relevant to demonstrate discriminatory animus on the part of Freeman, Lisowski, and Roberts, the individuals plaintiff claims are responsible for his termination. *See Holifield v. Reno,* 115 F.3d 1555, 1563-64 (11th Cir. 1997) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.") (citing *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir. 1990)) and *Standard,* 161 F.3d at 1330 (noting that only statements of the relevant decision-maker are "probative of discriminatory intent"). Thus, none of the comments cited by plaintiff would permit an inference that these individuals terminated plaintiff as a result of age-based discriminatory animus.

33

*Compare Damon,* 196 F.3d at 1362(holding that decision-maker's age-based remarks were sufficient to show pretext.)  Moreover, plaintiff acknowledged in his deposition that he "was treated in general with deference because of [his] age."  (Hoard Dep. at 77.)

Plaintiff's allegation that defendant mistreated another employee in his age group is similarly without support in the record.  In support of this allegation, plaintiff claims that defendant wrongfully terminated Marlene Neiman, a fifty-nine year old employee.  (PSMF at ¶ 54; Pl's Br. [61] at 32.)  There is no evidence, however, that Neiman's termination was in any way related to her age.  In fact, Neiman testified in her deposition that she did not feel that defendant treated her any differently because of her age.  (Neiman Dep. at 46.)  *Compare Damon,* 196 F.3d at 1362 (finding decision-maker's admission that he terminated or demoted five older employees in a one-year time period, in conjunction with other circumstantial evidence of age-based discriminatory animus, was sufficient to establish pretext).

Once defendant proffers a sufficiently probative, credible, non-discriminatory reason for its actions, as it has in the instant case, plaintiff must come forward with specific evidence tending to show that defendant's asserted reason is a pretext for discrimination.  *Chapman,* 229 F.3d at 1033.  Plaintiff has not met this burden.  Accordingly, defendant is entitled to summary judgment

34

on plaintiff's ADEA claim.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion for Summary Judgment [45].

SO ORDERED, this _12_ day of September, 2006.


_____
JULIE E.  CARNES
UNITED STATES DISTRICT JUDGE

35